Robert M. LAWRENCE,
Plaintiff-Appellant,

v.

**BAYVIEW LOAN SERVICING,
LLC, Defendant-Appellee.**

**No. 16-11116
Non-Argument Calendar**

United States Court of Appeals,
Eleventh Circuit.

Date Filed: 12/22/2016

---

George Nicholas Andrews, Yechezkel Rodal, Aaron Silvers, Loan Lawyers, LLC, Fort Lauderdale, FL, for Plaintiff-Appellant

Nancy M. Wallace, Michael J. Larson, Akerman, LLP, Tallahassee, FL, William Patrick Heller, Akerman, LLP, Fort Lauderdale, FL, Brendan Herbert, William Power McCaughan, Jr., Akerman, LLP, Miami, FL, for Defendant-Appellee

Before TJOFLAT, WILSON and HULL, Circuit Judges.

PER CURIAM:

Robert Lawrence appeals from the District Court's order granting Bayview Loan Servicing, LLC ("Bayview") summary judgment on his claims alleging that Bayview had placed unwanted autodialed calls to his mobile phone in violation of 47 U.S.C. § 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act ("TCPA"). Lawrence asserts that the District Court erred in finding that, as a matter of law, the inclusion of his cell phone number in a series of communications with Bayview regarding various loan issues nullified his prior revocation of his consent to be contacted. He argues that the inclusion of his number in these communications raised a dispute of material fact over the proper scope of consent, and that this question should have been left to the jury. Lawrence also contends that the District Court

erred by finding that he had orally revoked consent to be contacted only three times. He claims that this finding is not supported by the record and that his testimony establishes that it was his routine practice to orally revoke consent every time his number was dialed by Bayview's automatic telephone dialing system ("ATDS").[1] After careful consideration of the parties' briefs and the record, we affirm.

In May of 2007, Lawrence obtained a loan secured by a mortgage on his home in Incline Village, Nevada. This loan was originally serviced by Saxon Mortgage Services, Inc. ("Saxon"). Lawrence eventually requested a loan modification from Saxon and, as part of the application process, provided his cell phone number to the company. In 2011, Bayview assumed the servicing rights on Lawrence's loan in the process acquiring Lawrence's application for a loan modification, which included his cell number. Bayview uses an ATDS to contact its customers regarding loan management and administration and Lawrence began to routinely receive calls from Bayview placed through the ATDS. Over the next four years, Lawrence received over two hundred calls dialed using the automated system. On three occasions—October 5, 2011, June 4, 2012, and July 7, 2012—Lawrence spoke with a Bayview representative after being contacted through the ATDS and requested that he not be called. Following these requests, Bayview placed a message on his account indicating that he no longer wished to receive calls. But Lawrence's number remained in Bayview's computerized dialing system, and he continued to receive the periodic phone calls at issue in this suit.

Lawrence also frequently contacted Bayview during the four year period that the company serviced his loan. Lawrence called Bayview approximately 50 times from his cell phone in order to discuss various administrative issues he was having with his loan; in particular, Bayview's forced placement of unnecessary hazard insurance on the property. Lawrence also sent at least 32 separate letters that included his cell phone number to Bayview. The majority of these letters were generally addressed to Bayview and included Lawrence's cell number as part of the address or signature line. It is undisputed that the letters did not include explicit written limitations on the appropriate use of the provided cell phone number or any request not to be contacted via Bayview's ATDS.

Lawrence filed suit against Bayview on August 14, 2014.[2] He subsequently filed an amended complaint on August 31, 2015. That complaint included a single count alleging that Bayview violated the TCPA by placing calls to Lawrence's cell phone using an ATDS system without his prior express consent. Both parties filed separate Motions for Partial Summary Judgment on October 15, 2015. The District Court subsequently found that Lawrence had expressly consented to telephone calls from Bayview based on the loan modification paperwork he had previously completed. And, although Lawrence had orally

---

1. There is some question over whether Lawrence is also appealing the District Court's decision to grant Bayview leave to amend its responses to Lawrence's first request for admissions. But, Lawrence's initial brief fails to raise this issue, and it is consequently waived. *See Access Now, Inc. v. Southwest Airlines Co.,* 385 F.3d 1324, 1330 (11th Cir. 2004) (explaining that "a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed").

2. Lawrence continued to send letters to Bayview containing his cell phone number even after initiating this action.

revoked this consent on the three occasions he spoke with Bayview representatives after receiving an ATDS placed call, the Court also found that he had subsequently renewed his consent by mailing numerous letters containing his cell number to Bayview. Accordingly, the District Court granted summary judgment in favor of Bayview on all calls before October 5, 2011 (the date when Lawrence first orally revoked consent); all calls between March 25, 2012 (the date Lawrence sent his next letter containing his cell number to Bayview) and June 4, 2012 (the date of Lawrence's second oral revocation of consent); all calls between June 30, 2012 (the date Lawrence next mailed a letter containing his cell number to Bayview) and July 7, 2012 (the date of Lawrence's third and final oral revocation of consent); and all calls after November 8, 2012 (the date of the next letter containing Lawrence's cell number).

After the entry of partial summary judgment, a total of 12 calls remained at issue. These calls were made via the ATDS after Lawrence had orally revoked his consent to be called but before he mailed any documents containing his cell phone number to Bayview. Because of the very few calls that fell into this category, the parties jointly moved for entry of stipulated judgment in favor of Lawrence on these outstanding claims. The District Court granted this motion and entered final judgment in the case on February 17, 2016. This appeal follows.

We review a district court's grant of summary judgment de novo. *Johnson v. Governor of Fla.*, 405 F.3d 1214, 1217 (11th Cir. 2005). While engaging in this review, we " '[view] the record and [draw] all reasonable inferences in the light most favorable to the non-moving party.' " *Id.* (citation omitted). Summary judgement is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. (56)(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the non-movant," and the record provides a "real" basis for the dispute. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The TCPA prohibits using an ATDS to make non-emergency telephone calls to cell numbers without the "prior express consent of the called party." 47 U.S.C. § 227 (b)(1)(A)(iii). The meaning of prior express consent has been further clarified both by our own precedent and by the FCC, whose rulings have the force of law. *See Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1307 (11th Cir. 2015); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1121 (11th Cir. 2014). The FCC has explained that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* (1992 FCC Ruling), 7 FCC Rcd. 8752, 8769. The FCC has also stated that "the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* (2008 FCC Ruling), 23 FCC Rcd. 559, 564; *see*

*also* H.R. Rep. No. 102–317, at 13 (1991) (explaining that when a caller provides their phone number in a normal business communication "the called party has in essence requested contact"). Both this court and the FCC have broadly interpreted "consent to be called at a number in conjunction with a transaction [to extend] to a wide range of calls 'regarding' that transaction." *See Mais*, 768 F.3d at 1123 (quoting *In re GroupMe, Inc./Skype Commc'ns S.A.R.L. Petition*, 29 FCC Rcd. 3442, 3446 (2014)).

No specific method is required under the TCPA for a caller to obtain prior consent to place automated calls or to subsequently revoke that consent. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* (2015 FCC Ruling), 30 FCC Rcd. 7961, 7990. Accordingly, we recently concluded that "Congress sought to incorporate 'the common law concept of consent'" into the TCPA. *Osorio v. State Farm Bank*, 746 F.3d 1242, 1256 (11th Cir. 2014). Thus, consonant with common law principles, oral revocation is sufficient to withdraw prior express consent. *Id.*; *see also* 2015 FCC Ruling, 30 FCC Rcd. at 7965 (noting that "[c]onsumers may revoke consent at any time and through any reasonable means").

■ Lawrence concedes that the application he completed for a loan modification with Saxon included his cell phone number and satisfied the TCPA's prior consent requirement. He also does not contest that his provision of prior express consent to contact extended to Bayview once that company acquired his loan modification file from Saxon and took over the routine servicing of his loan. Consequently, it is undisputed that Bayview is not liable under the TCPA for all calls placed by its ATDS prior to Lawrence's first oral revocation of consent on October 5, 2011. We also assume that Lawrence's oral statements to Bayview telephone operators were sufficient to revoke his consent for TCPA purposes. *See Osorio*, 746 F.3d at 1242 (finding that oral revocation of consent was permissible under the TCPA). The critical remaining question is whether Lawrence's communications with Bayview following his revocations of consent were sufficient to reinstate that consent and allow Bayview to contact him via an ATDS.

Lawrence argues that the District Court erred by finding that, as a matter of law, his inclusion of his cell number in letters sent to Bayview functioned as a renewal of prior express consent under the TCPA. He claims that because these letters involved discrete problems with his loan, primarily a dispute with Bayview over the nature of his homeowner's insurance, his consent to receive calls should have been restricted to those issues. Accordingly, communications from Bayview that fell outside of that limited context were not consented to and should subject the company to TCPA liability. In support of this argument, Lawrence primarily relies on the common law understanding that the trier of fact must typically determine the appropriate scope of consent based on the circumstances surrounding that consent.[3]

3. Lawrence relies heavily on several out-of-circuit district court decisions to support the idea that consent under the TCPA should be limited by the circumstances under which the caller receives the called party's mobile number. But, these cases provide little support for Lawrence's argument. In both instances, the called party provided a cell number for a particular purpose, as specified by the caller. *See Kolinek v. Walgreen Co.*, No. 13 C 4806, 2014 WL 3056813, at *4 (N.D. Ill. July 7, 2014) (explaining that the plaintiff had provided his phone number after a pharmacist told him it was needed "'for verification purposes.'"); *Hill v. Homeward Residential, Inc.*, No. 2:13–cv–388, 2014 WL 4105580, at *6

We do not quibble with Lawrence's characterization of the law governing the scope of consent under the TCPA. As we previously decided in *Osorio*, Congress intended for the common law to illuminate the proper approach to determining the scope of consent under the TCPA. *See Osorio*, 746 F.3d at 1255 (explaining that in the TCPA context we presume "Congress sought to incorporate 'the common law concept of consent'") (citation omitted).[4] Accordingly, a consumer can orally revoke consent, and consent can be limited by the particular circumstances under which it was granted. But, it is equally clear that the provision of a mobile phone number, without limiting instructions, suffices to establish the consumer's general consent to be called under the TCPA. *See* 1992 FCC Ruling, 7 FCC Rcd. at 8769. As Congress has explained, the provision of a cell phone number during an ordinary business communication is essentially a request for contact at the provided number. H.R. Rep. No. 102–317, at 13 (explaining that when a caller provides their phone number in a normal business communication "the called party has in essence requested contact"). Here, Lawrence's letters simply do not provide a basis for limiting the scope of his consent, and simply operate to make his cell phone number generally available to Bayview, his creditor.

Indeed, the specialized statutory context of the TCPA is not required to find a renewal of consent as a matter of law. Common law principles also reveal that Lawrence's letters provided a sufficient basis for the District Court find that he had renewed his consent to receive phone calls placed by Bayview's ATDS. Under the common law approach to consent relied on by Lawrence, "words or conduct ... reasonably understood by another to be intended as consent ... [are] as effective as consent in fact." Restatement (Second) Of Torts § 879 (1979). So, even if Lawrence did not intend to consent in fact to calls placed by an ATDS system, he nevertheless provided apparent consent by repeatedly providing his cell phone number to Bayview without qualification. Lawrence's communications never suggest he only wished to be contacted regarding certain issues, nor do they mention his desire not to be contacted via ATDS. Instead, Lawrence's letters all involve a routine issue with the servicing of his mortgage,

(noting that the language of the loan modification application completed by the plaintiff expressly limited contact to matters involving the loan modification itself). Here, Lawrence volunteered his phone number, without limitation, during the course of ordinary business communications regarding his loan. Bayview never requested the number, or otherwise gave Lawrence any indication that his number would only be used for a particular purpose.

4. Lawrence also argues that the District Court erred by finding that Bayview relied on his letters to resume contacting him, or in the alternative, by failing to address the issue of reliance at all when determining the appropriate scope of his consent to contact evidenced by his letters. These arguments are unavailing. First, the District Court never made a finding of reliance at all. Instead, it simply noted that finding Bayview liable under the TCPA for contacting Lawrence after he provided his cell number, without limitation, in the ordinary course of servicing his mortgage placed the company "in a vicious Catch-22." Further, whether Bayview actually relied on Lawrence's communications to contact him is not relevant to the TCPA inquiry. As a matter of law, the provision of a cell phone number without limitation is sufficient to establish consent to be called at that number. *See* 1992 FCC Ruling, 7 FCC Rcd. at 8769; *Mais*, 768 F.3d at 1123. And that is exactly what Lawrence did in this case. While a showing of reliance can surely point toward the appropriate scope of consent, here, Lawrence gave consent as a matter of law. There was no need for the District Court to consider reliance on this record, and thus the failure to make such a finding was not error.

and display a general willingness to be contacted with any "Questions/Requests." Quite simply, as the District Court explained, "[t]here is no dispute that Plaintiff knowingly provided his cellular telephone number to Bayview and did so with the expectation that Bayview would use that number to contact him directly." This is more than sufficient to meet the common law definition of consent, and the District Court did not err in finding that consent existed as a matter of law.

Recognizing that the unqualified provision of his cell phone number to Bayview qualifies as prior express consent under the TCPA, Lawrence also claims that the District Court should have found that a genuine issue of material fact existed regarding whether the content of his letters effectively limited the scope of his consent. Because Lawrence does not dispute that he had provided his prior express consent prior to the first of his oral revocations on October, 5, 2011, we need only determine whether prior express consent was re-established following that revocation and the two subsequent oral revocations identified by Lawrence. Only the three letters sent by Lawrence immediately following each revocation of prior express consent are germane to this inquiry. These three letters were sent on March 25, 2012, June 30, 2012, and November 8, 2012.

*Letter of March 25, 2012*

This letter discusses Lawrence's provision of an insurance statement to Bayview for purposes of demonstrating that his property was insured by USAA. The letter provides that the insurance statement has some missing pages that were deemed nonessential, but Lawrence was still willing to provide those pages if required by Bayview. The letter ends with Lawrence affirmatively providing his phone number without limitation: "Questions/Requests: XXX-XXX-3295." The letter is silent with respect to any previous revocation of consent, and appears to affirmatively invite Bayview to contact Lawrence with questions or requests involving his loan.

*Letter of June 30, 2012*

This letter also involves the dispute between Bayview and Lawrence regarding homeowner's insurance. The letter notes that Bayview apparently removed the additional insurance policy that had been placed on Lawrence's home. The letter also mentions that additional documentation verifying Lawrence's insurance coverage is enclosed, and that additional paperwork could be made available at Bayview's request. Lawrence included his cell number, without qualification, below his signature. But, the letter itself does not ask Bayview to limit its communications with Lawrence in any way, nor does it provide that his phone number is to be used only for a particular purpose. The letter also never mentions Lawrence's prior oral revocation of consent, or otherwise indicate that he does not consent to Bayview contacting him via ATDS.

*Letter of November 8, 2012*

This letter continues to reference Lawrence's repeated attempts to resolve his dispute over homeowner's insurance with Bayview. Lawrence again encloses a USAA insurance billing statement with the letter, and again indicates that he is willing to provide any other information that might be necessary to resolve the issue to Bayview's satisfaction. Lawrence again included his cell number without any limitation immediately after his signature. The letter makes no reference to any previous revocations of consent and it does not otherwise suggest that Lawrence wished for his cell number to be used only for a particular purpose.

Lawrence argues that because these letters all related to the provision of insur-

ance information to Bayview, the company's use of his repeatedly provided cell number was necessarily limited by that context. But, the plain text of these letters belays that assertion. None of the relevant letters ever explicitly limit the subject of Lawrence's communications with Bayview to the insurance issue, and the letters themselves were mailed to the attention of the company generally instead of a specific department. These letters do not mention Lawrence's oral revocation of his consent to be called or request that Bayview not use an ATDS to contact him. In short, as the District Court properly found, Lawrence failed to provide instructions to the contrary or otherwise take steps to limit the scope of his consent to be contacted. And, the record does not reveal any factual grounds to set aside that conclusion.

It is true that Lawrence sent at least 29 other letters to Bayview following his oral revocations. But so long as consent was properly re-established by the aforementioned three letters, and none of the 29 other letters indicate a retraction of that consent, this fact is of no moment. It may well be true, as Lawrence argues, that many of these letters were addressed to particular Bayview employees, or that some letters did not include his cell number.[5] But, it is also true that none of these letters ever reference auto-dialing or otherwise indicate Lawrence's wish not to be called regarding his debt. Lawrence would have us decide that because he communicated with Bayview regarding discrete, loan-related issues after giving his general consent to be contacted, there is a genuine dispute of material fact over whether he provided instructions limiting the scope of his consent. It does not. The FCC has made clear that "persons who knowingly release their number have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." 1992 FCC Ruling, 7 FCC Rcd. at 8769.[6] No such instructions to the contrary were given here. The lower Court did not err in finding that Lawrence's letters never provided Bayview with explicit instructions limiting the scope of his consent to be contacted.

■ Finally, Lawrence argues that the District Court erred by finding that it was an undisputed material fact that he had

---

**5.** Lawrence also claims that his mortgage payments submitted from February until September, 2015 directed Bayview to submit "its communications to his attorney." This does appear sufficient to serve as a revocation of consent to be contacted, but a closer inspection of the letters in question reveals that no revocation occurred. At the time these mortgage payments were submitted, Lawrence had already served Bayview with a copy of his TCPA complaint. He directly addressed this complaint in his mortgage payment and specifically stated that "any relevant *legal* correspondence" should be directed to his attorney. **(emphasis added)** The payment otherwise included Lawrence's mobile number without limitation. There is no suggestion from these communications that Lawrence sought to limit Bayview's ability to contact him regarding the ordinary servicing of his loan.

**6.** The crux of this argument appears to be an by Lawrence to revisit his earlier assertion that, as a matter of law, the proper scope of a consumer's consent to be contacted under the TCPA is context-specific, and that it should be left to the jury to decide whether the context of Lawrence's letters implied a restriction on consent. Although we agree that the context of consent matters under the TCPA, none of these letters suggest an attempt by Lawrence to limit the scope of his consent to be contacted. Instead, he provides his number to Bayview without instructions to the contrary in the course of ordinary communications regarding the servicing of his loan. And, the content of these letters does not reveal the existence of a genuine issue regarding the existence of limiting instructions.

only orally revoked consent to be called three times.[7] He contends that his testimony clearly shows that it was his "consistent" practice to answer calls from Bayview by telling the agent "[d]on't call me" or otherwise asking to be placed on a "no call list." Lawrence estimated that he answered approximately ten phone calls from Bayview in this manner. But, this testimony is plainly insufficient to create a genuine issue of material fact such that "a reasonable jury [could] return a verdict in [Lawrence's] favor." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

Bayview's records and the affidavit of a vice president with the company, Vanessa Maetsu, indicate that Lawrence responded to a phone call dialed by an ATDS system only 3 times: October 5, 2011, June 4, 2012, and July 7, 2012. Lawrence's own motions for summary judgment rely exclusively on the three undisputed revocations that are supported by Bayview's records and the testimony of its officers. While it is true, that merely agreeing to a limited set of undisputed facts does not serve to end a broader factual inquiry, the fact that Lawrence relied heavily on these calls strongly suggests that he lacks any serious evidence to support his contention that he orally revoked his consent on more than three occasions. And a close review of his deposition testimony confirms this inference. Lawrence's testimony expressly indicates that he did not recall how many times he told Bayview representatives not to call him. Lawrence later estimated that he had answered at least ten calls from Bayview, but this testimony comes in the context of discussing the overall number of calls he received and does not involve the revocation of consent issue. Indeed, Lawrence's testimony does not even establish that all ten of these calls were actually dialed by an ATDS system. Even after extensive discovery, Lawrence is unable to point toward a single additional date where he orally revoked consent while speaking to a Bayview representative. The trial court did not err in finding that his ambiguous deposition testimony failed to present a genuine issue of material fact for the jury to decide.

**AFFIRMED**

---

7. Bayview argues that this issue was not raised below and was therefore waived. But, we review summary judgment decisions de novo and "we may in our discretion resolve questions not addressed by the district court."

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 609 (11th Cir. 1991).