[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-10498

_____

D.C. Docket No. 9:15-cv-80665-DMM

EMILY SCHWEITZER,

Plaintiff - Appellant,

versus

COMENITY BANK,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 10, 2017)

Before JORDAN and JILL PRYOR, Circuit Judges, and COOGLER,[*] District
Judge.

JORDAN, Circuit Judge:

_____

[*] The Honorable L. Scott Coogler, United States District Judge for the Northern District of
Alabama, sitting by designation.

In law, as in life, consent need not be an all-or-nothing proposition.  Having already concluded that the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., allows for the oral revocation of consent, *see Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1255 (11th Cir. 2014), we now hold that the Act permits a consumer to partially revoke her consent to be called by means of an automatic telephone dialing system.

## I

As relevant here, the TCPA makes it unlawful for "any person," absent the "prior express consent of the called party," to make any non-emergency call "using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service[.]"  47 U.S.C. § 227(b)(1)(A)(iii).  Anyone who violates the TCPA may be sued in federal court for "actual monetary loss" or $500 in damages for each violation, "whichever is greater."  § 227(b)(3)(B).  Treble damages are also available for knowing or willful violations. § 227(b)(3) (concluding language).

One of the key concepts in § 227(b)(1)(A)(iii) is consent.  In *Osorio*, we applied common-law consent principles and held that, absent a contractual restriction to the contrary, the TCPA allows a consumer to orally revoke her consent to receive automated calls.  *See Osorio*, 746 F.3d at 1255 ("We . . . conclude that Betancourt and Osorio, in the absence of any contractual restriction

2

to the contrary, were free to orally revoke any consent previously given to State Farm to call No. 8626 in connection with Betancourt's credit-card debt.").

## A

Emily Schweitzer applied for, and was issued, a credit card by Comenity Bank in 2012. In her application, she provided her cellular phone number to Comenity, and the district court concluded that she had initially consented to allow Comenity to call her on this number. *See* D.E. 82 at 5. Because no one challenges that conclusion on appeal, we assume without deciding that it is correct. *Cf. In the Matter of Rules & Regulations Implementing the TCPA*, 7 F.C.C. Rcd. 8752, 8769, 1992 WL 690928 (1992) ("[P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary.").

In 2013, when Ms. Schweitzer failed to make required payments on her credit-card account, Comenity placed calls to her cellular phone concerning the delinquency. Comenity used an automated telephone dialing system falling within the purview of the TCPA to make hundreds of such calls.

On October 13, 2014, a Comenity employee called Ms. Schweitzer, told her that she was two payments behind on her account, and asked if she could make a $35 payment. In response, Ms. Schweitzer said the following:

Unfortunately I can't afford to pay [my past due payment] right now. And if you guys cannot call me, like, in the morning and during the work day, because I'm working, and I can't really be talking about these things while I'm at work. My phone's ringing off the hook with you guys calling me.

D.E. 24-2 at 18. The employee replied that "[i]t's a phone system. When it's reporting two payments past due, it's a computer that dials. We can't stop the phone calls like that." *Id.* at 18–19.

Five months later, on March 19, 2015, a different Comenity employee called Ms. Schweitzer about her past-due account. During that conversation, Ms. Schweitzer twice told the employee to please stop calling her. *See, e.g.,* D.E. 24-2 at 21 ("Can you just please stop calling? I'd appreciate it, thank you very much."). Comenity did not place any more automated calls to Ms. Schweitzer's cellular phone after this conversation.

**B**

Ms. Schweitzer sued Comenity for violating the TCPA. She alleged that during the October 13 conversation she had revoked her consent to have Comenity make calls to her cellular phone using an automatic telephone dialing system. And she claimed that Comenity violated the TCPA by making over 200 automated calls to that phone between October of 2014 and March of 2015.

The district court, "applying the common-law concept of revocation," granted summary judgment in favor of Comenity on Ms. Schweitzer's TCPA

4

claim. First, Comenity "did not know and should not have had reason to know that [Ms. Schweitzer] wanted no further calls." D.E. 82 at 7. Second, Ms. Schweitzer did not "define or specify the parameters of the times she did not want to be called," and as a result "no reasonable jury could find that [she] revoked consent to be called[.]" *Id.* at 7–8.

Ms. Schweitzer now appeals. Exercising plenary review, *see, e.g., Johnson v. Bd. of Regents*, 263 F.3d 1234, 1242–43 (11th Cir. 2001), and with the benefit of oral argument, we reverse the district court's grant of summary judgment. The TCPA allows a consumer to partially revoke her consent to receive automated calls, and there is an issue of material fact as to whether Ms. Schweitzer's statements during the October 13 conversation constituted a revocation of consent to be called in the morning and during the work day.

## II

In defending the district court's summary judgment order, Comenity makes two arguments, one legal and one factual. The legal argument is that the TCPA does not permit partial revocations of consent. As Comenity puts it, the only effective revocations are unequivocal requests for no further communications whatsoever. *See* Appellee's Br. at 17–21. The factual argument is that, even if partial revocation of consent is possible, no reasonable jury could find that Ms. Schweitzer's statements on October 13 constituted a revocation of her consent

to be called in the morning or during work hours.  *See id.* at 22–29.  We address each argument below.

## A

The TCPA was enacted to address certain invasive practices related to "unrestricted telemarketing," and is designed to protect consumers from receiving unwanted and intrusive telephone calls.  *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).  Although the TCPA is silent on the issue of revocation, our decision in *Osorio* holds that a consumer may orally revoke her consent to receive automated phone calls.  *See Osorio*, 746 F.3d at 1255.

We reasoned in *Osorio* that, based upon statutory silence regarding the means for providing or revoking consent, we could infer that Congress intended for the TCPA to incorporate the common-law understanding of consent, which generally allows for oral revocation.  *See id.*  Moreover, we explained that "allowing consent to be revoked orally is consistent with the government interest articulated in the legislative history" of the TCPA—namely, enabling the recipient of incessant and unwanted calls to "tell[ ] the autodialers to simply stop calling." *Id.* at 1255–56 (internal quotation marks and citation omitted).  Because the TCPA is silent as to the partial revocation of consent, our analysis is again informed by common-law principles.

At common law, consent is a willingness for certain conduct to occur. *See* Restatement (Second) of Torts § 892A(1) (1979); William Prosser, Law of Torts § 18, at 101 (4th ed. 1971). Such willingness can be limited, i.e., restricted. *See* Restatement (Second) of Torts § 892A(3) & cmt. g. As one treatise has put it, a person "may limit her consent as she likes, consenting to one act but not another, or to acts at one time but not another, or to acts under some conditions but not others." Dan Dobbs et al., 1 The Law of Torts § 108, at 328 (2d ed. 2011). So, if an actor exceeds the consent provided, the permission granted does not protect him from liability for conduct beyond that which is allowed. *See* Restatement (Second) of Torts § 892A(4) & cmt. h. *Cf. McCabe v. Vill. Voice, Inc.*, 550 F. Supp. 525, 529 (E.D. Pa. 1982) (addressing consent for photograph to appear in a certain publication).

The notion of limited consent finds support in other areas of federal law. For example, the Fourth Amendment allows a person to provide limited consent to a search. *See, e.g., Florida v. Jimeno*, 500 U.S. 248, 252 (1991) ("A suspect may of course delimit as he chooses the scope of the search to which he consents."). And under the consent provision of the federal wiretapping statute, 18 U.S.C. § 2511(2)(d), a person can agree to only certain calls being recorded. *See, e.g., Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 582 (11th Cir. 1983) ("We can think of no reason why consent . . . cannot be limited. We therefore hold that consent

within the meaning of [§] 2511(2)(d) is not necessarily an all or nothing proposition; it can be limited.").

We therefore conclude that the TCPA allows a consumer to provide limited, i.e., restricted, consent for the receipt of automated calls. It follows that unlimited consent, once given, can also be partially revoked as to future automated calls under the TCPA. "The consent principle . . . makes [a person's] right of self-determination or autonomy the centerpiece of the law on intentional torts." Dobbs, The Law of Torts § 105, at 319.

Our conclusion is supported by the maxim that the greater power normally includes the lesser. We think it logical that a consumer's power under the TCPA to completely withdraw consent and thereby stop all future automated calls, *see Osorio*, 746 F.3d at 1255, encompasses the power to partially withdraw consent and stop calls during certain times. *See Posadas de Puerto Rico Assocs. v. Tourism Co. of Puerto Rico*, 478 U.S. 328, 345–46 (1986) (concluding that "the greater power to completely ban casino gambling necessarily includes the lesser power to ban advertising of casino gambling"); *Davis v. Commonwealth of Massachusetts*, 167 U.S. 43, 48 (1897) ("The right to absolutely exclude all right to use necessarily includes the authority to determine under what circumstances such use may be availed of, as the greater power contains the lesser.").

Comenity argues, however, that a recent declaratory ruling by the FCC precludes partial revocation of consent under the TCPA. *See In the Matter of Rules & Regulations Implementing the TCPA*, 30 F.C.C. Rcd. 7961, 2015 WL 4387780 (2015). For a number of reasons, we disagree. For starters, the FCC concluded that "[n]othing in the language of the TCPA or its legislative history supports the notion that Congress intended to override a consumer's common law right to revoke consent." *Id.* at 7994. The ruling therefore does not cast doubt on our reliance on common-law principles. Moreover, the issue of partial revocation was not before the FCC in 2015. The language Comenity relies on—that "consumers may revoke consent in any manner that clearly expresses a desire not to receive further messages," *id.* at 7996—was used by the FCC in rejecting a creditor's claim that express consent, once given, cannot be revoked at all under the TCPA. This language cannot be read out of context to forbid the partial revocation of consent. Indeed, other language in the FCC's ruling, although admittedly not conclusive, cuts against Comenity's all-or-nothing view of consent. *See id.* (concluding that "callers may not control consumers' ability to revoke consent").[1]

---

[1] "Congress has conferred upon the FCC general authority to make rules and regulations necessary to carry out the provisions of the TCPA." *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1117 (11th Cir. 2014). Although the FCC issued its 2015 ruling after the events in this case, we agree with the parties that we should treat it as persuasive because it is clarifying in nature as to the matter of consent. *See Osorio*, 746 F.3d at 1256 (according persuasive effect to FCC ruling issued after events in the case had taken place). "[C]oncerns about retroactive

9

The district court was concerned that partial revocation of consent might present "logistical and technical challenges to callers and present evidentiary difficulties for those attempting to recover under the TCPA." *See* D.E. 82 at 8 n.8. The potential for such complications, however, is not enough to limit a consumer's powers under the TCPA.   In any event, as Comenity's own representatives recognized, *see* D.E. 35-7 at 39–40, it is technologically feasible (though maybe more expensive) to program the industry's sophisticated software to place calls to a consumer only during certain times.   And a creditor can always decide that, if a consumer opts for partial revocation, it makes more practical and business sense to just not place any more automated calls to her.

## B

We now turn to whether Ms. Schweitzer's statements on October 13 constituted a partial revocation of consent under the TCPA, and precluded Comenity from placing subsequent automated calls to her in the morning and during work hours.   This issue is close, but we conclude that on this record the matter of partial revocation is for the jury.

*Osorio* quoted with approval the Third Circuit's opinion in *Gager v. Dell Financial Services, LLC*, 727 F.3d 265, 270–71 (3d Cir. 2013), which in turn

---

application are not implicated when an amendment that takes effect after the initiation of a lawsuit is deemed to clarify relevant law rather than effect a substantive change in the law." *Piamba Cortes v. Am. Airlines, Inc.*, 177 F.3d 1272, 1283 (11th Cir. 1999).

quoted the Restatement (Second) of Torts. *See Osorio*, 746 F.3d at 1253. The Restatement explains that "consent is terminated when the actor knows or has reason to know that the other is no longer willing for him to continue the particular conduct." Restatement (Second) of Torts § 892A(5), cmt. i. We apply this common-law standard here, as it generally dovetails with the FCC's view that "consumers may revoke consent in any manner that clearly expresses a desire not to receive further messages." *In the Matter of Rules*, 30 F.C.C. Rcd. at 7996. *See also Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017) (concluding that "[i]t is reasonable for the FCC to interpret the TCPA to permit revocation of consent," and applying the FCC's "clearly expresses" standard).

On October 13, Ms. Schweitzer said the following to the Comenity employee: "[I]f you guys cannot call me, like, in the morning and during the work day, because I'm working, and I can't really be talking about these things while I'm at work. My phone is ringing off the hook with you guys calling me." Although this statement is undisputed, that does not necessarily mean that summary judgment in anyone's favor is appropriate. As we have said on more than one occasion, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the district court should deny summary judgment." *St. Charles Foods, Inc. v. Am.'s Favorite Chicken Co.*, 198 F.3d 815, 819 (11th Cir. 1999). *See, e.g., Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (reversing order

granting summary judgment: "Reasonable inferences from the undisputed facts can be drawn in favor of a racial motivation finding or in favor of a political motivation finding.").

According to the district court, no reasonable jury could find that Ms. Schweitzer partially revoked her consent to receive automated calls on October 13 because she did not specify what "the morning" and "during the work day" meant. A jury could certainly find that Ms. Schweitzer—like the protagonist of a recent hit song—was too equivocal, *cf.* Carly Rae Jepsen, *Call Me Maybe*, on Curiosity (Universal Music Canada 2012), but we do not think that the lack of specificity is fatal to her claim of partial revocation.

The district court correctly explained, *see* D.E. 82 at 8 n.8, that the word "morning" can mean the "first or early part of the day, lasting from midnight to noon or from sunrise to noon," or it can mean sunrise or dawn. *See* 1 Shorter Oxford English Dictionary 1833 (5th ed. 2002); The American Heritage Dictionary of the English Language 1144 (4th ed. 2009). And the "work day" is defined as the "part of the day in which one works," American Heritage Dictionary at 1982, a definition which is itself vague and tautological.

Yet "the morning" and "the work day" cannot be viewed, defined, or analyzed abstractly or in isolation. They should (or at least can be) understood in the context of a customer trying to get a creditor not to call her at certain times of

the day.  The "meaning of language is inherently contextual," *Moskal v. United States*, 498 U.S. 103, 108 (1990), and "the scope of consent, like its existence, depends heavily upon implications and the interpretation of circumstances." Dobbs, The Law of Torts § 108, at 328–29.

As we have noted, under the common law consent ends when the actor knows or has reason to know that the person is no longer willing to allow certain conduct.  Notably, Comenity's personnel testified that they understood what Ms. Schweitzer meant.  The Comenity employee who spoke to Ms. Schweitzer on October 13 acknowledged that she "was specific" and wanted the company to "make appointed phone calls."  The employee therefore did not need to ask Ms. Schweitzer what she wanted.  *See* D.E. 35-5 at 29, 56.  A Comenity corporate representative similarly said that there was nothing unclear about Ms. Schweitzer's request.  *See* D.E. 35-1 at 20, 25.  Although the subjective understanding of these Comenity employees may not be determinative concerning the effect of Ms. Schweitzer's October 13 statements, it is certainly relevant to what was reasonably communicated and understood, and precludes summary judgment.

"[J]urors are correctly instructed to use their common sense and to evaluate the facts in light of their common knowledge of the natural tendencies and inclinations of human beings." *United States v. Cruz-Valdez*, 773 F.2d 1541, 1546 (11th Cir. 1985) (en banc) (internal quotation marks and citation omitted).  We

13

believe a reasonable jury could conclude that Ms. Schweitzer did not want automated calls in the several hours between the time one wakes up and goes to school or work (say the couple of hours from 6:00 or 7:00 a.m. to 8:00 or 9:00 a.m.), or during a typical work day (say the eight hours from 8:00 or 9:00 a.m. to 4:00 or 5:00 p.m.).  *See Watkins*, 704 F.2d at 582 ("It is the task of the trier of fact to determine the scope of consent and to decide whether and to what extent the interception exceeded that consent.").  *Cf. Dixon v. Monterey Fin. Servs., Inc.*, 2016 WL 3456680, *3 (N.D. Cal. June 24, 2016) (consumer's statement to creditor –"I asked you guys not to call me and you can contact my attorney"—created an issue of fact as to revocation under the TCPA); *Wright v. Target Corp.*, 2015 WL 8751582, *8 (D. Minn. Dec. 14, 2015) (ruling, in a TCPA case, that revocation of consent presented a disputed issue of fact based on consumer's "cease calling" statement, which was itself conditioned on creditor providing proof of debt).[2]

## IV

Under the TCPA, a consumer may partially revoke her consent to receive automated phone calls.  The "issue of consent is ordinarily a factual issue," *Thompson v. Louisiana*, 469 U.S. 17, 23 (1984) (analyzing the Fourth Amendment), and here summary judgment here was inappropriate because a

---

[2] During the call on October 13, Ms. Schweitzer complained about not being able to talk during work and about her phone ringing off the hook.  Given that this call was placed at 2:47 p.m., *see* D.E. 24-3 at 5, a reasonable inference is that she was at work during that call, and that, in turn, makes it easier to figure out what she meant by "the morning" and "the work day."

14

reasonable jury could find that Ms. Schweitzer partially revoked her consent to be called in "the morning" and "during the workday" on the October 13 phone call with a Comenity employee.[3]

**REVERSED AND REMANDED**.

---

[3] Because this case is being remanded for trial, and there has been no determination of liability, we decline to address Ms. Schweitzer's argument that Comenity acted knowingly or willfully in violation of the TCPA. *See* 47 U.S.C. § 227(b)(3) ("If the court finds that the defendant willfully or knowingly violated this subsection[,] . . . the court may, in its discretion, increase the amount of the award to an amount equal to not more than [three] times the amount available under [this subsection].").