Charlene Edwards Honeywell, United States District Judge
This cause is before the Court on Plaintiff Marguerite Miller's Motion for Summary Judgment and Supporting Memorandum of Law (Doc. 24), Defendant's Response in Opposition to Defendant's [sic] Motion for Summary Judgment (Doc. 30), and Plaintiff Marguerite Miller's Reply to Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment and Supporting Memorandum of Law (Doc. 31). Miller alleges that Defendant Ginny's, Inc. ("Ginny's") violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), and the Florida Consumer Collection Practices Act ("FCCPA"), § 559.72 of the Florida Statutes, by repeatedly calling her cellular telephone after she orally advised Ginny's that she would not pay on an account and requested that it stop calling her. Doc. 1 ¶¶ 1, 8-11; Doc. 24 p. 1-2. She moved for summary judgment on these claims. Doc. 24. Upon due consideration of the parties' submissions, including declarations, affidavits, depositions and exhibits, and for the reasons that follow, the Court will deny Miller's motion for summary judgment.
I. BACKGROUND AND FACTS[1]
Miller opened a credit account (the "Account") with Ginny's on June 18, 2013, when ordering $310.63 worth of items for her personal and household use. Doc. 28 ¶¶ 3, 9, 10. When opening the Account, Miller received and agreed to Ginny's Choose 'N Charge® Credit Terms ("Credit Terms"). Id. ¶ 11. Ginny's Credit Terms provided as follows:
COMMUNICATION : We may use contact information you provide to contact you from time to time regarding your Account. We may contact you in any manner consistent with the information you have provided. For example, once you have provided contact information, *1326 we may contact you by telephone, e-mail or text message. We may use automated technology for the purpose of contacting you, including but not limited to automatic dialing or similar equipment. We may call you on your mobile telephone. We may monitor or record calls from you to us and calls from us to you. When you give us your mobile telephone number we may contact you at that number using automated dialing equipment and we can leave pre-recorded or other messages, as allowed by law .
Doc. 30-1 p. 8 (emphasis added). Also, at the time of opening the Account, Miller provided Ginny's with her cellular telephone number. Doc. 28 ¶ 13. The cellular telephone connected with that number was used by Miller for ten years, was the only telephone regularly used by Miller, the account for the telephone number was in Miller's name and she paid for it, and Miller maintained exclusive possession of the phone. Id. ¶ 13; see also Miller Depo. 18:24-25, 19:7-11, 20:2-6; Doc. 24-1 ¶ 2.
Miller did not make any required payments on the Account and Ginny's began making regular calls to Miller's cell phone on July 31, 2013 using an automatic dialing machine. Doc. 28 ¶¶ 8, 12-13. The calls were not recorded and Miller did not maintain personal records of the calls because she expected them to stop. Id. ¶¶ 14, 20; Chamberlain Depo. 9:21-23; Doc. 24-1 ¶ 5. At all times relevant to this case, Ginny's had a policy that it would not cease collection calls if the consumer gave only an oral cease-and-desist request. Doc. 28 ¶ 6; Chamberlain Depo. 6:22-7:5. Instead, it was Ginny's policy to cease such calls only in the event that a written request was made. Id.
Ginny's maintained a Collection Correspondence Log, which documented the content of calls to customers through an action code that corresponded with various interactions between an agent and customer, and by a narrative that summarized the agent's conversation with the customer. Doc. 30-1 ¶¶ 9-11, 15. One of the action codes was "313," which Ginny's stated was used when the answering party did not identify him or herself, and would not be used if the answering party confirmed that he or she was the client. Doc. 30-1 ¶¶ 13-14; Chamberlain Depo. 21:8-18; 22:11-16. Miller disputes that this is the only instance in which the 313 action code would be used, based on Ginny's policy manual. The policy manual explained that the code should be used as follows:
313 TT THIRD PARTY-NO MSG
The agent will use this action code at any time they speak to someone at the phone number dialed, but were unable to leave a message.
This code should also be used in the following situations:
*This code may also be used when the agent speaks to the customer but does not obtain any promise to pay from the customer and the reason why does not fit any of the No Pay codes listed below. The agent should make clear notes.
Doc. 37-4 p. 1. The no pay codes included ones for inability to pay due to personal illness or illness of a family member, inability to pay due to unemployment of the customer or his or her spouse, and a general "other" category which was to be used "when the customer states they can't pay on the account for any reason other than those" two preceding reasons. Doc. 37-4 p. 1. Another action code was "317," which stated:
317 WON'T PAY / NO DISPUTE
The agent will enter this code when the customer states their refusal to pay without any dispute or legitimate reason.
Doc. 37-4. The 317 action code was also to be used if a customer told the agent to *1327 cease and desist communications or to stop calling. Doc. 28 ¶ 17; 30-1 ¶ 12.
In addition to the Collection Correspondence Log, Ginny's maintained a database, the Dialer Records, which recorded the number of attempted calls to a customer, regardless of whether the call actually connected with the number or resulted in it ringing. Doc. 30-1 ¶ 18-19. The Dialer Records also showed the duration of a call, which did not appear on the Collection Correspondence Log. Doc. 38-3. Miller stipulated that the number of calls, dates, and indications of contact contained in Ginny's records were correct, but she did not stipulate that any recorded content of the conversations contained in Ginny's records were correct. Doc. 28 ¶ 20.
Ginny's call logs showed that the first telephone call answered by Miller was on November 21, 2013, and lasted for 125 seconds. Doc. 37-3 p. 18; 38-3 p. 2. Ginny's input the 313 "TT 3RD PARTY/NO MES" action code for the call. Doc. 37-3 p. 18. In the comments section for the call, the Ginny's agent wrote "TP USED PROFANITY LANGUAGE." Id. Following this call, Ginny's attempted to place 145 calls to Miller, with the final call being placed on April 13, 2015. Doc. 28 ¶ 22; Doc. 38-3.
Several additional calls were answered and given the 313 action code of "TT 3RD PARTY/NO MES." Starting from the next oldest call, Miller's phone was answered on January 15, 2014, the phone call lasted for 13 seconds, and the Ginny's agent wrote in the "scratch pad" "TP HUNG UP." Doc. 37-3 p. 17; Doc. 38-3 p. 2. The next answered telephone call occurred on May 16, 2014 and lasted for 32 seconds. Doc. 37-3 p. 16; Doc. 38-3 p. 2. Miller's phone was answered again on June 19, 2014 and the call lasted for 20 seconds. Doc. 37-3 p. 14; Doc. 38-3 p. 3. Another call was answered on August 7, 2014, which lasted for 37 seconds. Doc. 37-3 p. 13; Doc. 38-3 p. 3. A call was answered on September 8, 2014, which lasted for 16 seconds. Doc. 37-3 p. 11; Doc. 38-3 p. 3. An additional call was answered on September 18, 2014, which lasted for 34 seconds. Doc. 37-3 p. 11; Doc. 38-3 p. 3. Additionally, between October 17, 2014 and the date of the last call, April 13, 2015, Miller received 79 calls from Ginny's, three of which were answered but lasted only one second, indicating that the answering party disconnected the call upon answering. Doc. 28 ¶ 25; Dios Depo. 17:5-6; Doc. 38-3 p. 4. The action code of 317 did not appear in Ginny's records, and there was no other indication in its records that Miller requested that it cease its calls to her, or stated that she would not make payments on the Account. Chamberlain Depo. 26:7-9; Doc. 30-1 ¶ 17.
Based on the repeated telephone calls, Miller filed this action for violation of the TCPA and FCCPA. Doc. 1.
II. LEGAL STANDARD
Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c) ; Celotex Corp. v. Catrett , 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. Celotex , 477 U.S. at 323, 106 S.Ct. 2548 ; Hickson Corp. v. N. Crossarm Co. , 357 F.3d 1256, 1259-60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." Celotex , 477 U.S. at 325, 106 S.Ct. 2548.
*1328 When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. Id. at 324, 106 S.Ct. 2548. Issues of fact are "genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. Celotex, 477 U.S. at 323, 106 S.Ct. 2548. However, a party cannot defeat summary judgment by relying upon conclusory allegations. See Hill v. Oil Dri Corp. of Ga. , 198 Fed.Appx. 852, 858 (11th Cir. 2006).
III. DISCUSSION
A. TCPA
The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls. Mims v. Arrow Fin. Servs., LLC , 565 U.S. 368, 372, 132 S.Ct. 740, 745, 181 L.Ed.2d 881 (2012). The TCPA prohibits any person from "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system [ ("ATDS") ] or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ...." 47 U.S.C. § 227(b)(1)(A)(iii). A party who is contacted in violation of the TCPA may recover, for each such violation, the greater of his or her actual monetary losses or $500 in damages, se ibr.US_Case_Law.Schema.Case_Body:v1">e id. § 227(b)(3)(B), and the Court, in its discretion, may "increase the amount of the award to an amount equal to not more than 3 times the amount available" if it finds that the defendant's violation of the TCPA was willful or knowing, see id. § 227(b)(3)(C).
A called party may expressly consent to receive ATDS calls from a creditor. 47 U.S.C. § 227(b)(1)(A). "[T]he provision of a mobile phone number, without limiting instructions suffices to establish the consumer's general consent to be called under the TCPA." Lawrence v. Bayview Loan Servicing, LLC , 666 Fed.Appx. 875, 880 (11th Cir. 2016) (citing In re Rule & Regulations Implementing the Tel. Consumer Prot. Act of 1991 (1992 Ruling), 7 FCC Rcd. 8752, 8769 ). However, a consumer may also revoke such consent, and the revocation may be accomplished orally. Schweitzer v. Comenity Bank , 866 F.3d 1273, 1274-75 (11th Cir. 2017) (citing Osorio v. State Farm Bank, F.S.B. , 746 F.3d 1242, 1255 (11th Cir. 2014) ). Miller provided Ginny's with consent to call her using an ATDS by agreeing to the Credit Terms and providing Ginny's with her cell phone number in connection with the credit transaction. Doc. 30-1 ¶¶ 5-7, p. 8-9. Thus, the issue here is whether undisputed evidence establishes that Miller revoked her consent to receive such calls.
Miller submitted an affidavit in which she attested that every time she spoke with a Ginny's representative, she requested that Ginny's stop calling her, that she would not make payment, and that she preferred to receive written bills every time that she spoke with a Ginny's representative. Doc. 24-1 ¶ 4. Miller also attested that when she received calls from Creditors such as Ginny's, she would identify herself but be cautious about what personal information she would provide over the telephone. Id. ¶ 3.
Ginny's submitted an affidavit from its credit compliance consultant, who was involved in the administration of the Account and who had personal knowledge of Ginny's practices and procedures. Doc. 30-1 *1329 ¶ 2; Chamberlain Depo. 34:16. The credit compliance consultant attested that if a customer confirmed his or her name, the 313 action code would not be used. Doc. 30-1 ¶ 14. Because the action code 313 was the only code used for answered telephone calls, the compliance consultant attested that Miller never (1) identified herself, (2) instructed Ginny's to stop calling her cell phone, (3) told Ginny's that she would not make payment on the Account, or (4) told Ginny's that she preferred to be contacted in writing. Id. ¶¶ 16-17. Additionally, during a deposition, the credit compliance consultant stated that if a debtor requested that Ginny's stop calling, the request would be recorded in its system. Chamberlain Depo. 26:19-21.
Courts have repeatedly held that where evidence conflicts as to whether consent was orally revoked, summary judgment is not proper. Walker v. Transworld Sys., Inc. , No. 8:14-cv-588-T-30MAP, 2014 WL 7225212, at *3 (M.D. Fla. Dec. 17, 2014) (stating that "a factual dispute regarding alleged [oral] revocation of consent cannot properly be resolved on summary judgment) (citing Osorio , 746 F.3d at 1256 ). In Osorio , for example, on cross-motions for summary judgment, the district court granted judgment for the defendant where the plaintiff submitted testimony that he told the defendant's agent twice to stop calling, and the defendant contradicted this testimony. 746 F.3d at 1256 ("[The plaintiff] says that he twice told [the defendant] to 'stop calling.' [The defendant] says that he did no such thing."). Although the Eleventh Circuit's opinion does not indicate what evidence was submitted by the defendant to contradict the plaintiff's testimony, the parties' briefing suggests it submitted call logs by its agent. Brief for Appellee/Defendant at 10, Osorio v. State Farm Bank, F.S.B. , No. 13-10951-DD (11th Cir. July 29, 2013), 2013 WL 3964536. The Eleventh Circuit held that "[t]his is exactly the kind of factual dispute that cannot properly be resolved on summary judgment." Osorio , 746 F.3d at 1256.
Moreover, courts have held that summary judgment is inappropriate where the evidence is substantially similar to that presented here, that is, the plaintiff's sworn statement that he or she orally revoked consent conflicts with the defendant's records, which contain no such notation. In Gray v. Morgan Drexen, Inc. , No. 2:13-cv-83-FtM-29DNF, 2014 WL 2573227, at *3 (M.D. Fla. June 9, 2014), the plaintiff stated that she revoked consent orally on several occasions, and the defendant responded that based on its records, no such revocation was made. The Court ruled that "summary judgment is inappropriate because material issues of fact exist regarding if and when [plaintiff] revoked any consent she may have given." Id. Similarly, in Watkins v. Wells Fargo Bank, N.A. , No. 15-5712 (RMB/KMW), 2017 WL 2399086, at *6 (D.N.J. June 2, 2017), the United States District Court for the District of New Jersey ruled that it could not grant summary judgment in favor of the defendant where the evidence included the plaintiff's sworn testimony that he told the defendant's representatives to stop calling his cell phone every time he received such a call, as well as evidence that the defendant's "policies and procedures require[d] its representatives to record if a customer revokes consent to be called." Id. The Court ruled that this created a genuine issue of material fact as to whether the plaintiff revoked consent to receive calls on his cell phone. Id.
Here, Miller argues that the use of the 313 action code in connection with each of her answered calls is a red herring, because it could mean that she identified herself but did not promise to pay, and no other action code would apply to her request that she preferred written bills. Doc. 31 p. 3-4. This argument is not persuasive *1330 because it does not address Ginny's evidence that even under such circumstances, Ginny's would also use the 317 action code or input a comment that she had requested not to be called. Doc. 30-1 ¶¶ 12, 17. Thus, Miller did not overcome Ginny's creation of an issue of material fact.
Indeed, Miller's reply highlights the existence of a factual dispute here. In the reply, Miller contends that the Court should not credit Ginny's records because they "reflect an incomplete and flawed history of the collection efforts against" her. Doc. 31 p. 4-5. In essence, Miller's reply requests that this Court make a credibility determination, and find her sworn statement regarding oral revocation more credible than Ginny's records and the affidavit of Ginny's compliance consultant. However, the Court may not do so in ruling on a motion for summary judgment. Strickland v. Norfolk S. Ry. Co. , 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences form the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.") (quoting Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ). Instead, the Court must rely on the record evidence, and weigh all inferences in favor of the non-moving party-here, Ginny's. Id. In doing so, the Court concludes that the evidence regarding Miller's oral revocation of consent is disputed. Accordingly, Miller is not entitled to summary judgment on her TCPA claim.
B. FCCPA
The FCCPA permits a "debtor" to bring a civil action against a person who violates the statute's provisions. § 559.77(1), Fla. Stat. (2017). Unless the context otherwise indicates, a "debtor" is defined as "any natural person obligated or allegedly obligated to pay any debt." Id. § 559.55(8). Miller qualifies as a debtor.
1. Harassing Phone Calls
Section 559.72(7) of the FCCPA prohibits people collecting consumer debts from "[w]illfully communicat[ing] with the debtor ... with such frequency as can reasonably be expected to harass the debtor ... or willfully engag[ing] in other conduct which can reasonably be expected to abuse or harass the debtor ...." To determine whether there has been a violation of the FCCPA, a court must look to "the purpose as well as the frequency of the creditor's calls." Harrington v. Roundpoint Mortg. Servicing Corp. , No. 2:15-cv-322-FtM-38MRM, 2017 WL 1378539, at *10 (M.D. Fla. Apr. 11, 2017) (quoting Story v. J.M. Fields, Inc. , 343 So.2d 675, 677 (Fla. 1st DCA 1977) ).
No definitive threshold has been set to determine what frequency or volume of calls violates the FCCPA, but "courts generally have held that one or two phone calls per day are not sufficient ... absent evidence of other egregious conduct associated with the calls." Wolhuter v. Carrington Mortg. Servs., LLC , No. 8:15-cv-552-MSS-TBM, 2015 WL 12819153, at *3 (M.D. Fla. Oct. 28, 2015) (collecting cases). For example, if calls are made in a harassing nature or pattern, such as during overnight or early morning hours, this could support a conclusion that the defendant violated the FCCPA. Id. Additionally, even if a plaintiff submits proof of numerous calls, there will be no violation of the FCCPA if "the creditor called only to inform or remind the debtor of the debt, to determine his reasons for nonpayment, to negotiate differences or to persuade the debtor to pay without litigation." Harrington , 2017 WL 1378539 at *10 (quoting Story , 343 So.2d at 677 ). However, if calls "continue after all such information has been communicated and reasonable efforts *1331 at persuasion and negotiation have failed," then the communication "can reasonably be expected to harass the debtor" and "tends only to exhaust the resisting debtor's will." Story , 343 So.2d at 677.
Because the FCCPA states that "due consideration and great weight shall be given to the interpretations of the ... federal courts relating to the Federal Fair Debt Collection Practices Act ("FDCPA")," district courts have applied the standards of the FDCPA when interpreting section 559.72(7). Harrington , 2017 WL 1378539 at *10 (citing Leahy-Fernandez v. Bayview Loan Servicing, LLC , 159 F.Supp.3d 1294, 1304 (M.D. Fla. 2016) ). Courts have previously indicated in the context of the FDCPA that calling after being asked to stop may constitute egregious conduct in conjunction with daily calls that could be considered to harass a debtor. Waite v. Fin. Recovery Servs., Inc. , No. 8:09-cv-2336-T-33AEP, 2010 WL 5209350, at *3 (M.D. Fla. Dec. 16, 2010) (collecting cases).
Ginny's placed 145 calls to Miller's phone between November 21, 2013, and April 13, 2015, of which 79 were made after October 17, 2014. Doc. 28 ¶¶ 21p, 22; Doc. 38-3. The records showed that on several days, Ginny's attempted to call Miller 2-3 times. Doc. 38-3. The earliest call was placed around 7:11 a.m., and the latest call around 7:32 p.m. Id. The only evidence that Miller relied on to support her claim that this volume of calls was harassing was her sworn statement that she orally revoked consent and advised Ginny's that she would not make payment. Doc. 24 p. 10-11. For the reasons previously discussed in connection with Miller's TCPA claim, there is contradictory evidence regarding whether Miller requested that Ginny's stop calling her, and, therefore, summary judgment cannot be granted on Miller's claim under section 559.72(7) of the FCCPA.
2. Asserting a Legal Right that Does Not Exist
Section 559.72(9) of the FCCPA prohibits people collecting consumer debts from "assert[ing] the existence of some ... legal right when such person knows that the right does not exist." "The word 'knows' within the statute means to have actual, rather than constructive, knowledge of the illegitimacy of the debt or right." Scott v. Fla. Health Sciences Ctr., Inc. , No. 8:08-cv-1270-T-24-EAJ, 2008 WL 4613083, at *2 (M.D. Fla. Oct. 16, 2008) (citing Kaplan v. Assetcare, Inc. , 88 F.Supp.2d 1355, 1363 (S.D. Fla. 2000) ). Miller contends that Ginny's asserted the legal right to continue calling using an ATDS after Miller orally revoked consent, which contradicts the TCPA. Doc. 24 p. 12.
It is, indeed, a violation of the TCPA to continue to call a person using an ATDS after he or she has revoked prior express consent to such calls, even if such revocation is made orally. Osorio , 746 F.3d at 1255. Whether Ginny's asserted a right that did not exist depends on the factual issue of whether Miller orally revoked her consent to receive such calls.[2] Accordingly, summary judgment as to this claim must be denied.
IV. CONCLUSION
A genuine issue of material fact exists as to whether Plaintiff's consent for Defendant *1332 to call her cell phone was orally revoked. This factual dispute cannot properly be resolved on summary judgment. Therefore, Plaintiff is not entitled to a judgment in her favor as a matter of law.
Accordingly, it is ORDERED
1. Plaintiff Marguerite Miller's Motion for Summary Judgment and Supporting Memorandum of Law (Doc. 24) is DENIED.
DONE AND ORDERED in Tampa, Florida on December 13, 2017.

The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including the statement of undisputed facts, declarations, affidavits, depositions, and exhibits.

In its response to the Motion for Summary Judgment, Defendant asserted several reasons why Plaintiff's motion must be denied. Most of the reasons relate to the disputed issue of whether Miller orally revoked her consent. However, Defendant raised an issue regarding Plaintiff's FCCPA claims being barred by the statute of limitations. The Court has not addressed this issue because Defendant did not move for summary judgment on this affirmative defense.